GEORGE MASSET, Appellant, *v.* CLARA RUH, Respondent.

Second Department, June 9, 1922.

Vendor and purchaser — action for specific performance of option to purchase contained in lease — option to purchase during term and existence of lease — renewal of lease by tenant on same terms and conditions did not carry renewal of option.

An option to purchase property " at any time during the term and existence of lease," including property other than that leased, expires on the termination of the lease and is not renewed by the exercise by the tenant of his right to renew the lease under a clause which provides that " option of renewal for three years from expiration of lease on same terms and conditions to be paid in equal

monthly payments in advance on the first day of each and every month during the term aforesaid," where said option to purchase was contained in a subsequent paragraph of the lease.

APPEAL by the plaintiff, George Masset, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on or about the 23d day of May, 1921, upon the decision of the court, rendered after a trial at the Kings Special Term, dismissing the complaint upon the merits.

*Charles Pearle*, for the appellant.

*Nicholas Dietz*, for the respondent.

KELBY, J.:

The action was brought to compel the defendant to specifically perform an option to buy the premises described in the complaint, given by the defendant to the plaintiff; this option it was alleged was renewed by reason of the renewal of a former lease existing between the parties.

On the 9th day of August, 1916, Louis Ruh and Clara Ruh, his wife, of 291 Ridgewood avenue, as landlords, let the premises 295 Ridgewood avenue, Brooklyn, to the plaintiff, George Masset. The term was for three years, commencing August 15, 1916, at the yearly rent or sum of $540, payable $45 on the first day of each and every month. Contained in the same paragraph of the lease is the following option: " Option of renewal for three years from expiration of lease on same terms and conditions to be paid in equal monthly payments in advance on the first day of each and every month during the term aforesaid." In a subsequent separate paragraph of the lease is contained the following: " And the parties of the first part [landlords] give the party of the second part the right and option to purchase the premises #291 and 295 Ridgewood Ave. for the sum of Ten thousand ($10,000) dollars at any time during the term and existence of lease." It may be noted, in passing, that the option to buy in this case covers not only the premises demised, 295 Ridgewood avenue, but also covers the adjoining property, 291 Ridgewood avenue.

Before the expiration of the first term mentioned in the lease, that is, between 1916 and 1919, and on the 17th of April, 1919, the plaintiff tenant duly exercised the option of renewal contained in the written indenture of lease. The tenant wrote a formal written notice as follows: " Please take notice that I hereby exercise the option of renewal  *  *  *  upon the same terms and conditions as in said lease for a period of three years, and I hereby do renew the same."

No effort was made by the tenant nor is there any claim that

he ever attempted to exercise the option to buy the property for $10,000 during the initial term; however, during the renewed term he did offer to buy at the price named in the lease, and the defendant has refused to sell.

The sole question of law now presented is: Does a renewal of a lease " on same terms and conditions " also renew and keep alive an option to the lessee to buy " at any time during the term and existence of lease? "

The plaintiff cites and relies upon the case of *Pflum* v. *Spencer* (123 App. Div. 742), decided by this court in 1908. In that case, however, the option of renewal read as follows: " And it is further agreed by the party of the first part that she will grant a further lease of the aforesaid premises for a term of one year commencing at the expiration of the term herein granted at the same yearly rental *and containing like agreements and covenants as in these presents contained   *   *   *.*"

The words " *like agreements and covenants as in these presents contained* " are much more comprehensive in scope and meaning than those contained in the renewal clause in the case at bar, viz., " on same terms and conditions." The parties in the *Pflum* case clearly intended that the option to buy should be continued during the renewed term. The renewal clause now before us does not evidence such an intent. The option to buy is not an essential covenant of the lease, nor is it a term or condition of the demise. It is what Chancellor KENT defined in the case of *Rutgers* v. *Hunter* (6 Johns. Ch. 215) as an accidental covenant.

In *Rutgers* v. *Hunter* (*supra*) Rutgers as landlord leased real estate to Hunter as tenant for the term of twenty-one years. In the written lease the tenant Hunter covenanted: 1. To build within two years from date of lease a good brick dwelling house on the lot. 2. At expiration of term such house and other improvements built by Hunter, tenant, shall be valued by three indifferent persons to be chosen in the most usual way, and that Rutgers, landlord, shall and will pay and satisfy the amount of such valuation to tenant; and in case Rutgers " shall, or do not agree to, and abide by, and pay and satisfy unto the said Hunter the amount of such valuation," then he, Rutgers, " *shall and will renew the said lease, or redemise the said lot* " unto Hunter at such rent and upon such terms as may be agreed upon. The tenant Hunter took possession under the lease and built a house upon it and occupied it until the lease expired. Shortly before the end of the term the landlord, preferring to renew rather than pay the appraised value of the buildings, offered in writing to the tenant to renew the lease, and desired the tenant to name a reasonable rent, which the

tenant refused to do.   On January 14, 1820, the landlord offered to renew at the yearly rent of $150 and the taxes, etc.   The tenant refused and gave notice that he wished the buildings valued according to the tenor of the lease.   On March 30, 1820, the landlord gave notice to the tenant " that he appointed A. P. M. as one of the appraisers, but it must be explicitly understood, that he did not intend thereby to commit himself to pay the valuation, or waive the privilege in the lease of disagreeing to it, or his right of renewing the lease."   The tenant nominated an appraiser on his part and a third person was associated by the two named appraisers, and the three of them then valued the house and improvements at $4,583. The plaintiff being dissatisfied with the valuation and the tenant refusing to name terms on which he would accept a renewal of the lease, the landlord on the day on which the lease expired tendered to the tenant a new lease executed by the landlord for the term of twenty-one years from the 1st of May, 1820, at the yearly rent of $112.50, with all taxes, which were the same terms as contained in the first lease.   The tenant refused to accept the lease or execute the counterpart presented to him.   The landlord at the time of tendering the lease and counterpart, offered to add a clause to the lease that the landlord at the end of the term would redemise for the further term of twenty-one years at such rent as might be agreed upon by the parties; or if they should disagree, at such valuation of the annual rent as should be made by persons to be chosen by the parties.   The tenant refused to accept the lease with or without the additional clause, or to state his objections to it, but brought an action in the Supreme Court for breach of covenant against the landlord for not paying the $4,583, the valuation fixed by the appraisers.   The tenant left the premises on May 1, 1820, and they had at the time of the trial remained unoccupied.   The plaintiff, landlord, prayed for an injunction against the suit at law; that it be decreed that the landlord was not bound to abide by the valuation, but had a right to dissent from any valuation; and that the tenant was bound to accept a renewal of the lease upon reasonable terms to be settled by the court.   Chancellor KENT in his opinion in part said: " The covenants in the first lease, relative to the buildings, were no necessary part of it; and it would be absurd to suppose that an agreement to renew a lease did necessarily imply a lease, not only of the same term and rent, but, also, with all the covenants in the other, and which are the accidental and not the essential parts of a lease.   In the first lease there was a covenant on the part of the lessee, to build a good brick dwelling-house within two years.   This was a covenant that had no necessary, and could not have any reasonable connection, with the renewal of the lease;

and the same observation will apply to the covenant on the part of the lessor to pay, at the expiration of the lease, the value of such house, and of other buildings and improvements to be made, built and erected on the lot, or to renew the lease. If a covenant to renew the lease necessarily included a renewal of all the covenants in it, it would be tantamount to a covenant for perpetual renewal, and so extraordinary a covenant ought not to depend on inference merely. * * * I do not mean to say, that such covenants [to renew] are not valid; but I contend, only, that they must be clearly and certainly made, and are not to be deduced by construction from a covenant to 'renew the lease' without saying more."

In 24 Cyc. 1009, it is said: " The right to renew *ex vi termini* imports a new lease at the old rent, and with the same terms, conditions, and *essential* covenants, except the covenant to renew;" and there are many cases cited in support of this statement, but if the definition of the chancellor is borne in mind, that the covenant in question is not an essential covenant but an accidental one, this would be authority rather for the respondent than the appellant.

McAdam on Landlord and Tenant (4th ed. p. 574) says: " The word ' renew ' in itself imports the giving of a new lease on the same terms as the old one, unless the contrary otherwise appears; but it does not necessarily imply that it shall contain all the covenants of the former, at least not those which are accidental and nonessential, such as covenants to build, to pay for buildings, to renew, and the like," and cites *Rutgers* v. *Hunter* (*supra*) and *Willis* v. *Astor* (4 Edw. Ch. 595). And in Chaplin on Landlord and Tenant (p. 229) it is stated: " A mere covenant to renew a lease, implies a renewal for the same term and rent, but does not necessarily imply that the renewal lease shall contain all the covenants of the original lease." So also in Wood on Landlord and Tenant (p. 669, § 416) it is stated that "An unqualified covenant to renew a lease involves the making of a new lease of the same premises, upon the same essential terms, and for the same period, as in the original lease." And in the note on the same page it is stated: " Of course, there may be covenants in the original lease that are merely accidental, and not essential parts to the lease, and which are not to be incorporated into the renewal lease; as a covenant to build, to renew, &c., or any covenant that has been fulfilled, and that is not continuous."

In the case of *Trustees* v. *Gerbert* (57 N. J. L. 395), Snyder, the decedent, covenanted that he would let and demise to the plaintiff the premises " for a further term of five years from the expiration *of the term hereby created,* * * * upon the same

terms as to amount and payment of rent  *  *  *  further, that if the said party of the second part [plaintiff] shall desire to purchase the demised premises, that he will at any time during the tenancy hereby created *or agreed upon,* for the consideration of seven thousand dollars, sell and convey by warranty deed." The court in writing its opinion said that effect must be given to all the words used in the last clause, and stated that " The addition of the words ' or agreed upon ' must have been inserted to enlarge the right to a conveyance." The court said: " If the right to a conveyance was not to extend beyond the first term, that agreement would have been clearly expressed by the word ' created,' as used in reference to the right to a further lease. The addition of the words ' or agreed upon ' must have been inserted to enlarge the right to a conveyance; to give something more than the word ' created ' would have passed, otherwise they are of no force. They are apt words to entitle the lessee to a conveyance at any time during the term which was, at its option, to follow the term created, and a reasonable interpretation of the contract requires that signification to be imputed to them."

The case of *Maughlin* v. *Perry* (35 Md. 352) is in direct conflict with the decisions in *Rutgers* v. *Hunter* (*supra*) and *Trustees, etc.,* v. *Gerbert* (*supra*). Other cases examined are *Thomas* v. *Gottlieb, Bauern-Schmidt, Straus Brewing Co.* (102 Md. 417); *Schroeder* v. *Gemeinder* (10 Nev. 355); *Atlantic Product Co.* v. *Dunn* (142 N. C. 471); *D'Arras* v. *Keyser* (26 Penn. St. 249); *Sandberg* v. *Light* (55 Wash. 189), and *Abbott* v. *Seventy-six Land and Water* (87 Cal. 323). All of these latter cases have particular phrases which take the case without the case at bar, some of them resembling the case already referred to, *Pflum* v. *Spencer,* in this court.

This court adopts the reasoning of Chancellor KENT in *Rutgers* v. *Hunter* (*supra*), and it is, therefore, concluded that the option to buy was not renewed by the terms of the renewal clause contained in the lease.

The judgment should be affirmed, with costs.

Present — BLACKMAR, P. J., RICH, JAYCOX, MANNING and KELBY, JJ.

Judgment unanimously affirmed, with costs.