Hindu Incense Manufacturing Company, Appellee, v. John MacKenzie, Appellant.

Gen. No. 44,392.

NIEMEYER, J., dissenting.

Opinion filed November 1, 1948. Released for publication November 16, 1948.

JAMES B. MCKEON, of Chicago, for appellant.

ARVEY, HODES, & MANTYNBAND, of Chicago, for appellee; J. HERZL SEGAL, of Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff filed a complaint in two counts; one for a declaratory judgment, the other for an injunction. An answer was filed to both counts. Plaintiff made its motion to strike the answer to count 1. Upon a hearing limited to count 1, the answer thereto, and the motion to strike the answer, the court entered a declaratory judgment. No proceedings were had under count 2. Defendant's motion to vacate the declaratory judgment, to withdraw its answer and to strike plaintiff's complaint was denied. The appeal is by defendant from the declaratory judgment and the order denying the motion to vacate. No factual question is presented by this appeal.

The controversy between the parties, and the relief sought by the complaint for a declaratory judgment, arise out of a lease executed by defendant to Royal Manufacturing Company and by it assigned to plaintiff. The validity of the assignment is not involved. The lease is dated May 14, 1943, for a term beginning June 1, 1943, ending May 31, 1946, for the premises described in said lease, at a rental of $250 per month, payable in advance. It contained two options. The first: "To have and to hold the same unto the lessee from the 1st day of June, 1943, until the 31st day of May, 1946, with *mutual* option to renew for an additional term of two years under same terms and conditions." Second: "An option is hereby given to the lessee to purchase the said premises for the sum of Twenty-four Thousand ($24,000.00) Dollars at any time *during the term of this lease,* free and clear of encumbrances."

On March 11, 1946, plaintiff gave defendant notice in writing that it "does hereby exercise the option to renew for a period of two years from June 1, 1946, the lease executed May 14, 1943, . . . . Said renewal is to be in accordance with the same terms and conditions as those contained in the lease now in effect." On March 16, 1946, defendant wrote to plain-

tiff that he had elected to terminate said lease at the expiration date, May 31, 1946, "As provided in Mutual Option to Renew, which requires the election of both parties. However if you want to continue on monthly basis the rent will be the same monthly until further notice." Plaintiff continued to occupy the premises after the expiration date, May 31, 1946, but refused to pay the increased rental demanded by defendant. On April 6, 1947, plaintiff notified defendant, when it received the written demand for increased rental, dated March 31, 1947, that it would decline to pay the rent as increased, because the lease did not expire until May 31, 1948. On December 21, 1946, plaintiff wrote to defendant it was advised that defendant was about to effect a sale of the property, and claimed that it had an option to purchase which "expires May 31, 1948."

The declaratory judgment construed the first option to mean that either party had the right to renew the lease for the additional period, and it construed the second option to mean that the right to purchase, granted by the option, was effective up to the end of the renewed term.

Defendant contends that the option for renewal, because of the word "mutual" in the option, means that there could be no renewal without further express agreement of the lessor; that in any event the renewal option required an affirmative act on the part of the lessee to effectuate it; that the option to purchase must be limited to the original term, and could not be exercised during the renewed term.

■■ We cannot agree with the first contention. The word "mutual," employed in the option to renew, gave either party the right to renew the lease for the additional period. Otherwise, the provision would be rendered meaningless. *Stoddard v. Illinois Improvement & Ballast Co.*, 275 Ill. 199, 203. We agree with defendant that the option to renew required an affirmative act on the part of plaintiff, but this was accom-

plished by its written notice dated March 11, 1946. The notice given was a sufficient exercise of the option to renew, and plaintiff was not legally bound to pay the increased rent demanded, since the renewal term was for two years under the same terms and conditions contained in the lease.

The primary question upon this record is whether the option to purchase extended into the renewed term. Defendant earnestly argues that the option for renewal was not an option that created a present demise of the additional term, but the present demise was limited to the original term and, therefore, the option to purchase must be exercised, if at all, during the original term.

The cases cited by defendant, which state the doctrine that the effect of the option to renew is not to create a present demise of the additional term, have no bearing upon the question as to the proper construction to be given an option to purchase contained in such a lease. They refer to options for renewal and options for extension of the term, and hold that where there is an option for renewal, there must be an affirmative act on the part of the lessee to give effect to the option. It is clear to us that the compelling reason for the doctrine stated is, that a covenant for renewal is not self-executing, and that it, unlike an option to purchase, is not continued into the extended or renewed term, because the parties obviously do not contemplate a perpetual lease, as so clearly stated in *United States Brewing Co. v. Wolf,* 181 Ill. App. 509, cited by defendant.

Defendant relies upon *Fuchs v. Peterson,* 315 Ill. 370, and *United States Brewing Co. v. Wolf.* The *Fuchs* case is readily distinguishable from the instant case because it there called for the execution of a "new lease," and the required notice was not given. In *Vincent v. Laurent,* 165 Ill. App. 397, the court held that an affirmative act was necessary to exercise the option to renew, but once the affirmative act is per-

formed, it is not necessary that a new lease be executed. It is stated in Underhill on Landlord & Tenant, Vol. 2, § 803:

"In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended."

The *Wolf* case turned entirely upon another question. It did not involve an option to purchase. There, the lessor tendered a new lease for the additional term provided for in the option but omitted any further option provision for renewal. The lessee insisted that the option to renew upon the same terms and conditions contained in the old lease required the new lease contain the same renewal option. The court there held that the particular option to renew did not contemplate a perpetual lease by requiring each new lease contain another renewal option. *Fredman v. Sutliff & Case Co., Inc.*, 330 Ill. App. 119, cited by defendant, is also not in point, since the court there determined the renewal option inoperative because of the contradictory provisions contained in the option.

Defendant relies heavily upon *Pettit v. Tourison*, 283 Pa. 529, 129 Atl. 587, which seems to support defendant's contention. The weight of authority is to the contrary. In *Urbanski v. Szelaszkiewicz*, 15 Ohio App. 4, the court held that the renewal of the lease at its expiration implies an intent to renew the option to purchase. *Lewis v. Ludlam*, 115 Misc. 347, 189 N. Y. S. 636, affirmed in 204 App. Div. 889, 197 N. Y. S. 926, held the option to purchase extended into the renewed term. Other cases to like effect are *Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co.*, 102 Md. 417; *Masset v. Ruh*, 235 N. Y. 462; *Waters v. Wambach*, 140 Md. 253, and *Pflum v. Spencer*, 123 App. Div. 742, 108 N. Y. S. 344.

It will be observed from a careful reading of the *Pettit* case, that the court did not regard the option to purchase an integral part of the lease. This is not in

accord with the holding of our Supreme Court in *Garlick v. Imgruet,* 340 Ill. 136, at p. 146, where it said:

"It is common for leases to contain a provision conferring an option upon the tenant to purchase the demised premises. Such a provision is an integral part of the lease, . . . ."

It is again suggested in the *Pettit* case, that the parties had it in their power to employ language which would plainly indicate the intention of the parties to continue the option to purchase beyond the present term of the lease, and into the renewed term. This is not in accord with *Launtz v. Kinloch Tel. Co.,* 239 Ill. App. 204, at p. 208, and cases there cited, wherein it is said:

"As a general rule in construing the provisions of a lease relating to renewals, where there is any ambiguity, the tenant is favored and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself."

Treating the option to purchase as an integral part of the lease, and since no new lease was required to be executed, the language, "during the term of *this* lease," should be construed to mean that during *the life* of the lease, including the renewed term, the option to purchase remains in force. Had the parties intended otherwise, it would have been comparatively simple for the lessor to have avoided any question as to what the parties meant, by having the provision read during the *present* term of this lease, or any similar language to indicate clearly that the option to purchase was limited to the original term and not included in any renewed term. The record discloses the parties admitted before the court, upon the hearing, that the lease was drawn by the lessor. Under these circumstances the rule is well settled that the provisions of a

lease should be most strongly construed against the lessor. *Goldberg v. Pearl,* 306 Ill. 436, 440; *Liberty Nat. Bank v. Zimmerman,* 333 Ill. App. 94.

We regard the judgment of the circuit court correct, and it is accordingly affirmed.

*Judgment affirmed.*

TUOHY, J., concurs.

NIEMEYER, J., dissents. The meaning of "during the term of this lease" in a lease giving lessee an "option to renew for an additional term," has been determined by an unbroken line of decisions in this State. As early as *Hunter v. Silvers,* 15 Ill. 174 (1853), the court said (176): "But the question here arises, Was there a present demise for more than the one year? Was there an actual lease for more than the one term specified? The very statement of the contract shows that there was not. There was a positive lease for one year, with a right to the lessee to have *another lease* of the same premises at the end of that year for a *further term* of five years." (Italics ours.) In *Vincent v. Laurent,* 165 Ill. App. 397 (1911), (401, 402), the court said: "By the language used, it seems quite clear the parties contemplated a new lease at the expiration of the term of five years and not an extension, or to state it another way, the parties contemplated a lease for five years and not for a term of ten years at the option of the lessee." In *Fuchs v. Peterson,* 315 Ill. 370 (1925), the last expression of a reviewing court, it was said (372): "The effect of the option was not to create a present demise of the additional term beginning May 1, 1923. It amounted to no more than a covenant to grant the term. . . ." To like effect are *Sutherland v. Goodnow,* 108 Ill. 528, and *Eichorn v. Peterson,* 16 Ill. App. 601. The parties to the lease before us are presumed to have entered into the contract and employed the language used by them in the light of the existing law of the state

as declared in these decisions. *Illinois Bankers Life Ass'n v. Collins,* 341 Ill. 548, 552, 553.

The option to purchase being clearly limited to the term of the original lease expiring May 31, 1946, the intention, if any, of the parties to extend it to the new lease created by the exercise ''of the option to renew for a period of two years from June 1, 1946,'' as stated in plaintiff's notice of election to renew, must be found in the language of the original lease giving an ''option to renew for an additional term of two years under the same terms and conditions.'' The two options are independent covenants, having directly opposite objectives. The option to ''renew for an additional term of two years'' is part of the *habendum* clause and is in furtherance of an extension of the lease. The option to purchase is a separate provision, giving lessee the right to destroy the lease and change his occupancy of the premises from the possession of a tenant to that of an owner. It contains no term or condition relating to lessee's occupancy of the premises during the life of the lease. However, if it be conceded that the option to purchase is a term and condition of the demise, the provision for ''an additional term of two years under the same terms and conditions'' is a general clause applying to all the terms and conditions of the demise, whereas the provision giving the option to purchase is a specific clause limiting the life of a particular term or condition—the right to purchase—to the term of the original lease. Special provisions prevail over general provisions. 12 Am. Jur., Contracts, sec. 244. The language of the contract as to the term of the lease having been clearly defined by judicial decisions, there is no ambiguity, and the landlord was under no obligation to expressly negative the continuance of the option to purchase through the additional term. The controlling rule of construction is stated in *Domeyer v. O'Connell,* 364 Ill. 467, as follows:

"The object of construction is to ascertain the intention of the parties. (*Decatur Lumber Co. v. Crail,* 350 Ill. 319.) That intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express. . . . An implied intention is one necessarily arising from language used or a situation created by such language. If such intention does not necessarily arise it cannot be implied. On the other hand, absence of a provision from a contract is evidence of an intention to exclude such provision. Certainly, the fact of such absence cannot, of itself, give rise to an implied intention to include it."

The views expressed in this dissent are supported by *Pettit v. Tourison,* 283 Pa. 529, the only case brought to our attention from a jurisdiction holding, with Illinois, that a lease containing an option to renew is not a present demise for an extended or an additional term at the option of the lessee. In that case the plaintiff lessee, under a lease containing provisions of renewal of the lease and right to purchase substantially the same as in the lease before us, contended that the provision for the renewal of the tenancy carried with it an extension of the right to purchase during the term of the new lease. The court said (531–2):

"The privilege of renewing the lease for a further term, and the option given to purchase the property, confer separate and distinct rights and powers upon the lessee. The first has reference to a continuance of the tenancy, the latter confers upon the lessee the power to terminate the tenancy and to become the absolute owner of the property. The option to purchase is not an essential covenant of the lease, nor is it a term and condition of the demise. There are many covenants which are often found in leases which are independent and not essential parts of the demise, which,

without express agreement to that effect, are not to be incorporated in renewals thereof, such as a covenant to renew or any covenant that has been fulfilled and is not continuous. For example, the rule is well established that a lease containing a covenant to renew at expiration upon the same terms and conditions is fully carried out by one renewal without the insertion of another covenant to renew: *Swigert v. Hartzell,* 20 Pa. Superior Ct. 56; *Winslow v. Baltimore & Ohio R. R. Co.,* 188 U. S. 646; Note 14 A. L. R. 948.

. . . Under the language of the present lease the provision for renewal has reference to the continuance of the tenancy for a further period of five years, and the renewal operates only to continue the agreement as a lease: *Parker v. Lewis,* 267 Pa. 382. Had the parties intended that the option to purchase was to be extended beyond the original term, it would have been easy to have employed apt language to express such an agreement by providing for the exercise of the option not only 'during the term of *this* lease,' but during the renewal term. . . . To sustain plaintiff's contention, the option to purchase would have to be treated as one of the terms of the lease relating to the continuance of the tenancy for which the privilege of renewal is given, or the provision conferring the right to purchase would have to be enlarged by reading into it a right to exercise the option during the renewal term. This cannot be done.''

The cases cited in the majority opinion are readily distinguishable. *Garlick v. Imgruet,* 340 Ill. 136, involved only the questions of consideration for and mutuality of the option to purchase and the language used is necessarily limited to those questions. To hold that an option to purchase is an integral part of a lease, *i.e.,* the entire contract, is not inconsistent with holding that the option to renew and the option to purchase are independent covenants and that the option to purchase is not a term or condition of the demise. In

*Masset v. Ruh*, 235 N. Y. 462, the lease involved was for three years from August 1916, with an "option of renewal for three years from expiration of lease on same terms and conditions." The court said "The lease did not expire until August, 1922," and quoted with approval from *Orr v. Doubleday, Page & Co.*, 223 N. Y. 334, p. 340, that "The exercise by the defendant of the privilege of renewal extended the term of the lease for the additional period of ten years as a present demise for the full term of twenty years, the last half of which was to take effect at the termination of the first, at the option of the defendant." This is not the law in Illinois.

*Lewis v. Ludlam*, 115 Misc. 347, 189 N. Y. S. 636, a decision of the trial court (affirmed without opinion in 204 App. Div. 889, 197 N. Y. S. 926), is based solely upon *Pflum v. Spencer*, 123 App. Div. 742, 108 N. Y. S. 344, in which case the lease provided for a further lease "containing like agreements and covenants as in these presents contained" upon the giving of sixty days' notice. The owner expressly agreed to sell the premises, or part thereof, to the tenant at prices named under a provision reciting, "except that should the party of the second part give the requisite sixty days' notice in writing to the party of the first part of her intention to avail herself of the option of renewal and should the party of the first part or her husband die during said sixty days before expiration of the term herein granted, then the party of the first part or her executors may, upon obtaining a bona fide purchaser for the said premises, sell the same after having first given party of the second part the opportunity to purchase them at the price offered by such bona fide purchaser." The Appellate Court, without discussing principles or citing authorities, held that the renewal of the lease renewed the clause whereby the lessor agreed to sell the demised premises to the lessee. This was in accord with the language of the lease expressly

indicating an extension of lessor's obligation to sell during the renewed lease.

In *Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co.*, 102 Md. 417, and *Waters v. Wambach*, 140 Md. 253, all the provisions and covenants of the leases were *expressly continued in force from term to term after the expiration of the first terms* named in the leases.

In *Urbanski v. Szelaszkiewicz*, 15 Ohio App. 4, the provisions for renewal of the lease and option to purchase were substantially the same as in the case at bar. The court held that the renewal of the lease implied an intention to renew the option to purchase, citing *Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co.*, 102 Md. 417, *Maughlin v. Perry*, 35 Md. 352, and *Schroeder v. Gemeinder*, 10 Nev. 355. None of these cases support the decision. *Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co.*, has been heretofore discussed. In *Maughlin v. Perry*, the lease contained a renewal clause and an option to purchase "at any time before the expiration of this lease or tenancy." During the renewed period the lessor sold the premises and subsequently died. Six days before the expiration of the second term, lessee filed a bill for specific performance and offered to pay the purchase price. The right to exercise the option to purchase during the renewed term was not questioned, and defense was made on the ground that the purchase price had not been actually tendered or paid into court during the tenancy. In *Schroeder v. Gemeinder*, 10 Nev. 355, the lease was for two years, with the privilege of two more, with a covenant that the lessees should have "the first privilege of buying the said premises *at any time they may wish to do so*, at the price of one thousand dollars, gold coin." (Italics ours.) Construing the lease the court said "that from the peculiar wording of the entire clause in question, they mean that appellants could at any time purchase when respondent gave them the first privilege, as he was bound to do, before selling

to others, and if he did not give them notice of his intention to sell to others then they could, at any time they wished to do so,—certainly during the existence of the lease,—elect to make the purchase.'' It thus appears that none of the cases relied upon in the majority opinion are controlling or persuasive in support of the position taken.

The judgment should be reversed and the cause remanded with directions to enter a judgment denying the right of plaintiff to exercise the right of purchase.