## The Atlantic Refining Company v. Lasky et al.

*Cobau & Berry*, for plaintiff.

*Frank O. Moretti*, for defendants.

BRAHAM, P. J., March 10, 1954.—This case is before the court en banc on a demurrer to plaintiff's bill in equity praying for specific performance of defendants' grant in writing of an option to convey real estate. The option appears in a lease of defendants' property to plaintiff for use as a gasoline service station. The point raised by defendants' demurrer is that the option to convey was not exercised within the period covered by the lease in which it appeared, but in a renewal thereof, and that under Pennsylvania law a written agreement to renew a lease does not agree to renew an option to convey although both engagements are included in the same writing.

All the well pleaded averments of plaintiff's complaint are admitted by defendants' demurrer and our knowledge of the facts must come from this source. The facts are as now set out.

On January 10, 1934, defendant, Katherine A. Lasky, and her husband executed a lease to plaintiff for the lands here in question. By some subsequent conveyances and the death of the husband the title to the property became vested in Katherine A. Lasky and Alexander Lasky, her son. The lease, a copy of which is attached to the complaint as exhibit A, cov-

ered the five years from January 1, 1934, to December 31, 1938, with an option for an additional period of five years from January 1, 1938, "on the same terms and conditions as set forth in this lease agreement; sixty days written notice to be given prior to January 1, 1939".

On December 8, 1943, the parties executed a writing, called a lease extension agreement, (attached to the complaint as exhibit C) which recited the agreement of January 10, 1934, granted an additional term of two years, and concluded:

"And after the expiration of said two (2) year term, said lease shall continue from year to year, unless either party hereto shall give to the other at least ninety (90) days prior to the beginning of any such additional yearly term in writing of intention to terminate said lease at the expiration of the then current term. AND for the same consideration said Lessor does hereby ratify and confirm the above mentioned lease dated January 10, 1934, as herein amended, and does hereby demise and lease the above described land unto Lessee in accordance with all of the terms and conditions of said lease as herein amended."

On December 13, 1946, the parties executed a further writing, called a lease extension agreement, correcting the description of the property in the lease of January 10, 1934, extending the term for five years from January 1, 1947, to December 31, 1951, and granting an option to purchase the property for $15,000. The agreement is attached to the complaint and marked exhibit D.

The language of exhibit D with reference to the extension of the term is as follows:

"2: The term of said lease is hereby extended for an additional term of five (5) years from January 1st, 1947 to December 31st, 1951.

"3: Lessee may terminate said lease at the expiration of said extended five year term by giving to Lessor at least ninety (90) days prior to said expiration written notice of intention to so terminate but in default of such notice the said lease shall continue in full force and effect for another additional five (5) year term from January 1st, 1952 to December 31st, 1956.

"4: During said extended term or terms as the case may be all of the terms and conditions of said lease as amended by lease extension agreement dated December 8th, 1943 shall be and remain in full force and effect, PROVIDED HOWEVER, that rental during said extended term or terms as the case may be shall be NINETY DOLLARS ($90.00) per month and the leased premises shall be as described herein."

The language of exhibit D with reference to the option to purchase is as follows:

"5: Lessor hereby grants unto Lessee an option to be effective during the continuance of said lease as extended hereby to purchase for the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) premises (which include the demised premises) particularly described as follows, to-wit: . . .

"In the event Lessee desires to exercise this option Lessee shall do so by notice in writing to Lessor of such intention and Lessor agrees to convey said premises to Lessee within sixty (60) days after receipt of said notice, free and clear of all liens, encumbrances, restrictions and easements by deed containing general warranty of title, and upon delivery of such deed Lessee shall pay to Lessor the purchase price above set forth, subject to proration of current taxes and other current charges against the premises".

Plaintiff has been constantly in possession. No notice to terminate the lease was ever given prior to June 10, 1953, when plaintiff notified defendants of

its election to exercise the option. On June 16, 1953, defendants notified plaintiff that all leases were terminated as of August 10, 1953. Because of defendants' refusal plaintiff has been unable to go forward with plans to erect a modern service station on the land to replace plaintiff's existing facilities. Defendants have leased a part of the land agreed to be sold to persons other than the plaintiff.

On the basis of these facts is plaintiff entitled to specific performance of defendants' agreement to convey? Defendants contend that the renewal of the lease did not renew the option and in support of this position rely upon a number of precedents: Pettit v. Tourison, 283 Pa. 529; Detwiler et al. v. Capone et ux., 357 Pa. 495; Parker et al. v. Lewis et ux., 267 Pa. 383; Signor v. Keystone Consistory, A.A.S.R., 277 Pa. 504; Reichman v. Fisher, 60 D. & C. 673; Klugh's Estate, 63 York 5.

The principle deducible from these cases is that where there is an option to convey contained in a lease of real estate and the lease is renewed without mention of the option, the option is not renewed. Two things must be noted about the case at bar: first, the agreement is not for a releasing or a new lease but only for an extension of the term; second, the option might be exercised at any time "during the continuance of the lease as extended" by the agreement of December 13, 1946. The distinction between a new leasing and a renewing of the lease is pointed out in Aaron v. Woodcock, 283 Pa. 33, 37. The importance of electing to accept an option within the life of the lease is pointed out in the annotation in 163 A. L. R. §711, by the editorial comment in 32 Am. Jur. 286, §308, and 35 C. J. §1043 and by the opinion in Detwiler v. Capone, 357 Pa. 495, 501.

Plaintiff in the case at bar argues that the election of plaintiff, on June 10, 1953, to buy the property was

within the life of the lease and that the principle of Pettit v. Tourison, Parker v. Lewis and Signor v. Keystone Consistory Co., is not involved. The last five-year extension of the lease expired December 31, 1951, but the agreement granting this extension also provided for a further extension of five years from January 1, 1952, to December 31, 1956, unless terminated by a notice 90 days before time for the second extended term to begin. Plaintiff remained in possession. There was no notice to quit. Was plaintiff's election within the continuing term sufficient to bind defendants or had the option to purchase died with the five-year term 1947 to 1951? This is the question.

Close attention must be paid to the intention of the parties as disclosed by their several agreements. The agreement of 1934 provided for a five-year term with a right or option to lease the premises for an additional new term of five years and a provision for a holdover tenancy of 30 days. There was then no option to purchase. But the subsequent history of the dealings between the parties disclose an increasing confidence between them. The second agreement, that of 1943, provided for a new term of only two years but allowed a continuing lease from year to year if plaintiff held over.

The third agreement is the decisive one. It was signed December 13, 1946. It granted two terms, an absolute term of five years from January 1, 1947, to December 31, 1951, and an additional defeasible term of five years from January 1, 1952, to December 31, 1956. The final five-year term was defeasible because it continued unless terminated by prior notice. In such case the extended lease is not within the statute of frauds: McClelland v. Rush, 150 Pa. 57. No new lease is required; 1 Anno. L. R. A. 1916, E. 1237. The last term of five years was granted subject to be divested. If there were any doubt on the point it would

have to be resolved against the lessor: Kaufmann v. Liggett, 209 Pa. 87; Kittanning Coal Co. v. Moore, 362 Pa. 128, 131. All of the cases agree that an agreement for an extended term is stronger for the lessee than an agreement for renewal: 172 A. L. R. 1206, 1209, 1219; Aaron v. Woodcock, 283 Pa. 33; Harding v. Seeley, 148 Pa. 20. We therefore conclude that, when plaintiff executed the option to purchase which was allowed him "to be effective during the continuance of said lease [the lease of 1934] as extended" and exercised it during the term of five years from 1951 to 1956 to which he became entitled when defendants did not notify it to the contrary, plaintiff exercised the option during an extension of the lease and it is binding on defendants.

There is in this case no end of one lease and the beginning of another, with the option to buy mentioned in the first. Rather the continued term during which the option was exercised was granted contemporaneously with the option. This circumstance distinguishes all the cases cited by defendants.

This decision is in accord with the ruling of Pettit v. Tourison, 283 Pa. 529, 532, where, although the court evidences confusion as to the state of its own decision on the difference between renewing a lease and extending a lease, it nevertheless recognizes the force of an election to exercise an option to purchase where the election is made within the term of the lease. One of the cases cited may be mentioned here: Masset v. Ruh, 235 N. Y. 462, 139 N. E. 574 (1923), where the option might be exercised at any time during the existence of the tenancy. See on the same point Schaeffer et al. v. Bilger, 186 Md. 1, 45 A. 2d 775 (1946), 164 A. L. R. 706. Detwiler et al. v. Capone et ux., 357 Pa. 495, rightly decides only that the option was not granted in perpetuity but only during the term of the lease.

The rule contended for by defendants is contrary to the weight of authority: 32 Am. Jur. 285, §308. It seems unwise to extend it to a case where the option was clearly exercised within the time contemplated by the parties, namely, during the continuation of the lease as extended. Entertaining these views, we make the following

### Order

Now, March 10, 1954, defendants' demurrer is overruled and defendants are directed to answer on the merits within 20 days.