Cerbo *v.* Carabello, Appellant.

572

Submitted January 8, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Frank F. Truscott* and *Frank Carano,* for appellants.

*Vito F. Canuso,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 29, 1954:

The plaintiff filed a complaint in equity, praying for specific performance of a contract to sell real estate, contained in an option in a lease executed by the defendants' grantors.

By written lease agreement dated March 17, 1950, the first floor, basement and garage of the premises in question were leased by Anthony Mazzeo to the plaintiff and Gus Cerbo. Gus Cerbo later assigned his interest in the lease to plaintiff. The term of the lease was for one year from March 20, 1950, to March 19, 1951, with the right in the lessee to renew the lease for four successive one year periods. The lease agreement further provided: "The leassee (sic) also reserved the privilege to buy in the title of the above mentioned premises for the sum of ($11,500.00) this privilege is extended to the leasee (sic), to be exercised by the lessee at any time durning (sic) this lease or any renewals of the one year terms."

Before the end of the first term, March 19, 1951, and likewise before March 19, 1952, the plaintiff sent notice to the lessor of the intention to renew the lease.

On July 9, 1951, the real estate agent for Mazzeo notified the lessees that Mazzeo desired to sell the property and was giving them first chance to purchase. There was no covenant in the lease agreement that he had any such right. This was merely an unsolicited attempt by Mazzeo or his agent to have lessees exercise the option at a time when they were not required to do so. Gus Cerbo appeared at the office of the agent and desired the agent to reduce the price from $11,500 to $11,000. Mazzeo agreed to sell the property to Cerbo for $11,000. Cerbo requested the real estate agent to get a mortgage for him. The agent obtained a commitment for a mortgage in the sum of $7,300 and notified Cerbo, who promised to make a deposit. He did not

appear at the office of the agent to make any deposit, although he had been requested on several occasions so to do; and on June 21, 1952, Mazzeo sold the premises to the defendants, who had express notice of the outstanding lease with option agreement to the Cerbos.

On July 28, 1952, the plaintiff notified the defendants in writing of his desire to exercise the option contained in the lease, and advising that settlement would take place on August 5, 1952. The defendants refused to appear at the settlement and refused to convey the premises.

"The option must be considered as an independent clause in the agreement, giving the lessee the right to purchase the property within the time specified": *Signor v. Keystone Consistory A.A.S.R.*, 277 Pa. 504, 505, 121 A. 320.

The defendants raise the question that the option was mutually rescinded. This is based solely on the negotiations between Mazzeo's real estate agent and Gus Cerbo. It is true that parties to a written contract may abandon, modify or change it by words or conduct (*Elliott v. Lindquist*, 356 Pa. 385, 388, 52 A. 2d 180). But the difficulty with defendants' position is that neither the words nor conduct establish an intention to rescind or abandon the rights under the option. It is based solely on the negotiations begun by the notice of the real estate agent to Cerbo that Mazzeo desired to sell and was giving lessees first opportunity to purchase. Mazzeo was not misled by any of the actions of the lessee in response to the offer made by the agent to the lessee. At most it was a non-acceptance of an offer to enter into a new contract on the same terms except for a reduction in price. A party will not be permitted to take advantage of his own independent act to work a forfeiture of his own contract. Cf. *Cape May Real Estate Company v. Henderson*, 231

Pa. 82, 79 A. 982. Nowhere does it appear that the lessee waived his rights under the option to purchase.

Lastly, the appellants complain, as we understand it, that the chancellor did not find certain facts in favor of the defendants. But the findings of fact had evidence to sustain them, and when approved by the court en banc are binding on this Court.

Decree affirmed at the costs of the defendants.